J. A. McGILL, ET AL. v. WM. CROMWELL'S GDN., ET AL.

[Abstract Kentucky Law Reporter, Vol. 5—246.]

### Possession of Tenants in Common.

Where one of two persons holding real estate as tenants in com-
mon dies, his heirs become tenants in common with the survivor,
and his possession after the death of the other was also the pos-
session of the children, and he can not hold adversely to such
children.

**Best Evidence of Boundary of Land.**

The best evidence of the boundary of real estate is the recorded deed which conveys it; and where fraud or mistake is alleged it will require stronger proof than the mere declaration of the parties to contradict the plain stipulations of the written instrument.

**Occupying Claimants.**

Where one having color of title and believing he has title enters upon real estate and makes lasting improvements thereon, in good faith, and it is afterwards determined by the court that he is not the owner but a tenant in common with another who owns a half-interest in the real estate, equity requires that in making partition the value of such improvements shall go to the one who made them.

APPEAL FROM UNION CIRCUIT COURT.

September 27, 1883.

OPINION BY JUDGE PRYOR:

This case presents such peculiar features as require a reversal in order that the purchasers of the property in controversy may in some equitable way be compensated for the valuable improvements made upon the land in controversy.

The children or descendants of Wm. Cromwell are not affected by the plea of the statute of limitations as their uncle, John Cromwell, held the land in common with their father, and his possession after the death of their father was the possession also of the children. He was not holding adverse to their claim, but on the contrary it appears that their ancestor, William Cromwell, and his brother, John Cromwell, as early as 1838 purchased lots 3 and 4, now a part of Uniontown, and held this property under a joint deed until the year 1848 when they sold lot No. 3 to one Anderson, making him a conveyance therefor; and Anderson after that, in the year 1854, sold and reconveyed the lot to John Cromwell, thereby vesting the latter with the absolute title to lot No. 3. As to lot No. 4, no conveyance was ever made by William Cromwell of his interest in it to his brother John or to others, nor has any sale by parol been shown to have been made. John Cromwell, in 1859, may have attempted to sell the absolute estate in lot No. 4 to the coal company, and this he might have done under the belief that he could obtain the title of the heirs or children of his brother, William Cromwell.

The claim of John Cromwell was not inconsistent with that of

his brother's children until the year 1864, and we are not prepared to say that the evidence so far as the children are concerned shows a claim hostile to them at that date. The conveyance to Nolta in 1864 is of the boundary only of lot No. 3, and the paper title found upon record did not convey lot No. 4, but left it so far as the title was concerned in the original owners (the two Cromwells) and the title to one-half of lot No. 4 being in the children of Wm. Cromwell they were entitled to recover. We are not inclined to concur with the chancellor as to the right of recovery by the heirs of John Cromwell. It is manifest that the parties purchasing of John Cromwell, Nolta and his vendees, were under the belief that they owned both lots, and that John Cromwell was under the impression that he had sold to Nolta the entire property. In the first place it is proved that he sold the entire property and that the subsequent vendees of the lots or parts of the lots were informed by John Cromwell, when they were making improvements on lot No. 4, as to the true boundary of the lot, the latter saying that he once owned and sold the lot and for that reason knew the boundary.

It may be argued that this testimony is in direct conflict with the boundary of the land described in the conveyance made by John Cromwell, and that it is incompetent for the reason that the writing or recorded deed is the best evidence of the estate or boundary sold. This is doubtless the correct rule in the absence of fraud or mistake, and when either is alleged it would require still stronger proof than the mere declaration of the parties to contradict the plain stipulations of the written instrument. Here we have the statements of the vendor, John Cromwell, that he had sold the land, with the allegation by his vendee, or those claiming under him, that the mistake occurred by copying the boundaries of the conveyance by William to John of lot No. 3, and the further proof that these vendees entered into the possession of the land and erected valuable and lasting improvements, greatly exceeding the value of the land, and occupied and controlled the land as owners from the year 1864 to the institution of this suit in 1879. Besides, John Cromwell lived from 1864 until the year 1876 within a short distance of this real estate. He knew of the actual occupancy by these appellants and their vendors, and not only their occupancy but claim of right from 1864 to 1876, a period of twelve years; saw three valuable improvements erected, and was a customer or patron of the parties who had erected store-

houses on the premises. It is unnatural and unreasonable that such claims and occupancy by the one, and the acquiescence by the other, could exist without the belief on the part of both that a sale had been made and that the parties in possession and making these valuable improvements were in fact the owners. So far as the children of John Cromwell are concerned it should be adjudged that the title of their father passed and that he sold the entire property. The mistake we think is clearly established, and while it can not affect the title of William Cromwell's children it did pass the title to John Cromwell's interest.

As to the children of William Cromwell, they were never apprised of any adverse holding by their uncle and their claim to the property must be settled and determined upon equitable grounds. Their legal right to one-half of the lot is unquestioned, but their rights to the improvements and rents must be denied. The sale by John Cromwell to Nolta placing him in possession made the latter a tenant in common with the children of William Cromwell. These parties, who are appellants, entered, it is true, and made their improvements in good faith, believing that they were the absolute owners. This court holding that they are not the absolute owners must then hold that they were tenants in common with the children of William Cromwell, and, having expended their money in improving the property and making it valuable, equity requires that in the partition the appellees, children of William Cromwell, should have allotted to them their interest in the land in its condition before the improvements were made. Lot No. 4 has been divided and subdivided in the sales to the vendees of Nolta, and in dividing each parcel known as subdivisions of lot No. 4 the commissioner should give to the children of William Cromwell their portion of the subdivision in an unimproved state, if it can be done, so as to give them one-half in value of such subdivision without interfering with the improvements, and if this can not be done the parties should be permitted to remove their improvements on the parcels allotted to the heirs of William Cromwell.

This property must be partitioned as if John Cromwell had continued in possession and made improvements on the various subdivisions of the lot. He in equity would be entitled to the improvements if his cotenant could obtain his interest, without including the improvements. The tenant in possession is liable for rents less the

taxes paid, in the condition the property was before he improved it. This case should go to the commissioner to make partition and account of rents, and that this may be done the judgment is *reversed* as to the children of William Cromwell for further proceedings. *Graham's Heirs v. Graham*, 6 T. B. Mon. (Ky.) 561, 17 Am. Dec. 166; *Sneed's Heirs v. Waring*, 2 B. Mon. (Ky.) 522. As to the appellees, the children of John Cromwell, the jurgment is *reversed* with directions to dismiss the petition.

W. P. D. Bush, Ken Chapeze, Taylor & Benoy, for appellants.
Cromwell Adair, S. B. Vance, for appellees.

[Cited, *McCreary v. Skidmore*, 30 Ky. L. 463, 99 S. W. 219.]